El Pueblo de Puerto Rico, demandante y apelado, *v.* Santos Malavé Sánchez, acusado y apelante.

*Número:* CR-66-470          *Resuelto:* 3 de noviembre de 1967

396

*Héctor Lugo Bougal,* abogado del apelante; *J. F. Rodríguez Rivera, Procurador General Interino, y Elpidio Arcaya, Procurador General Auxiliar,* abogados de El Pueblo.

PER CURIAM: El apelante fue convicto por un jurado de asesinato en segundo grado e infracción del Art. 8 de la Ley de Armas. Además fue declarado culpable por tribunal de derecho de una infracción al Art. 6 de la Ley de Armas.

Señala que el tribunal sentenciador erró al omitir instrucciones sobre evidencia pericial cuando la teoría y prueba de defensa se basó exclusivamente en el testimonio de un perito.

El testigo de cargo José Lugo Pérez declaró que a las cinco de la tarde vio al acusado-apelante, desnudo de la cintura para arriba, parado en la orilla de la carretera frente a un callejón que conduce a la casa del acusado y a la de la víctima Carlos Manuel Santiago; que vio cuando el acusado

le hizo un disparo de revólver a Santiago estando a una distancia de 10 ó 12 pies el uno del otro; que Santiago se fue para encima de su agresor y éste le hizo dos disparos más. Solamente uno de esos disparos hirió a Santiago. La prueba no revela cuál de ellos fue ni la distancia a que se encontraba la víctima de su agresor cuando aquélla recibió la herida de bala que resultó mortal.

Este testigo negó que Santiago tuviera quemaduras después de la agresión y negó además que la herida se produjera en lucha cuerpo a cuerpo.

Otro testigo de cargo declaró que presenció los disparos. Pasaba por el sitio en el momento de ocurrir los hechos conduciendo su automóvil de servicio público. A una señal de Santiago se detuvo pero no lo cogió como pasajero porque el automóvil lo había fletado la familia que viajaba en él. Vio al acusado parado a la orilla de la carretera, desnudo de la cintura para arriba. Sintió un disparo, miró y vio cuando el acusado le disparaba a Santiago. Viró para recoger a Santiago y conducirlo al hospital pero dándose cuenta de que Santiago ya no tenía vida lo bajó del automóvil. Se dirigió a Santa Isabel y a la entrada de la Playita de Cortada le dio la información de lo ocurrido al Teniente López.

Hay en el récord otra prueba de cargo que es innecesario reseñar ahora. Basta agregar que el acusado fue al cuartel de la policía de Santa Isabel para entregarse.

La teoría de la defensa fue que la prueba de cargo era falsa y que ninguno de los testigos presentados por el fiscal pudo observar como ocurrieron los hechos. Para sostenerla presentó como única prueba el testimonio del doctor René Rigal, quien practicara la autopsia en el cadáver de Santiago. Declaró este testigo que el cadáver presentaba una herida redonda pequeña de un tercio de pulgada de diámetro con bordes quemantes invertidos hacia dentro en el lado izquierdo del mentón; que las heridas con bordes quemantes

ocurren cuando se dispara a corta distancia, aproximadamente como a un metro o a cuatro pies.

El juez instruyó a los señores del jurado que ellos los jueces de hecho, eran los llamados a apreciar la prueba y a declarar por el resultado de la misma, si consideraban probados los hechos alegados por el Fiscal o los alegados por la defensa. También les instruyó que el jurado no tiene derecho a prescindir de la evidencia admitida por la corte, ni tampoco a desechar arbitrariamente la declaración de un testigo y que era su deber resolver las contradicciones en la prueba.

Estas instrucciones cubrían la obligación del jurado de considerar el testimonio de todos los testigos incluyendo desde luego, ya que no se hizo distinción alguna, el testimonio del perito. Por otra parte no parece existir la aparente contradicción entre la prueba de cargo y el testimonio del perito, en lo que respecta a la distancia en que el acusado hizo los disparos a la víctima, pues la prueba no establece cuál de los tres disparos hirió a la víctima y según hemos visto, de acuerdo con la prueba de cargo, dicho disparo pudo haber sido hecho a corta distancia.

■ La omisión de una instrucción específica sobre prueba pericial, dadas las circunstancias aquí concurrentes, no lesionó los derechos sustanciales del apelante, y no debe, por tanto, dar motivo a la revocación de la sentencia. [1]

Se señala también como error la omisión de instrucciones respecto a que los señores del jurado podían absolver al acusado si tenían duda razonable y fundada sobre la prueba de El Pueblo.

El señalamiento carece de méritos. El juez transmitió la siguiente instrucción al jurado:

"Dice la ley que la culpabilidad del acusado en todo caso debe probarse fuera de toda duda razonable, y cuando existe esa duda, deberá traerse un veredicto de absolución."

---

[1] Véanse *Pueblo* v. *Burgos*, 76 D.P.R. 199 (1954) y *Pueblo* v. *Torres*, 75 D.P.R. 231 (1953).

■ Luego el magistrado se extendió en una explicación de lo que es duda razonable y terminó diciendo: "La duda que justifica la absolución no solo debe ser razonable, sino que debe surgir de una serena, justa e imparcial consideración de toda la evidencia del caso o de la falta de suficiente prueba en apoyo de la acusación."

Se señala como otro error cometido por el tribunal de instancia haber permitido manifestaciones del acusado en la etapa crítica de la investigación, contrario a la doctrina de los casos de *Rivera Escuté* y *Escobedo*.

■ El planteamiento no encuentra apoyo en el récord. Si bien el detective Pedro Luis Rivera Torres declaró sobre algunas manifestaciones incriminatorias que el acusado hizo en el Cuartel de la Policía de Santa Isabel, tal declaración la prestó el detective en ausencia del jurado. Cuando el jurado volvió a sala el detective se limitó a narrar cierta conversación entre el acusado y un hijo de éste, durante la cual el acusado le dijo a su hijo que lo que él tenía que decir era que no sabía nada, que él estaba viendo la televisión cuando ocurrió el suceso.

Convenimos con el Procurador General en que nada hay en el récord que pueda considerarse material, ni que tenga relación con las doctrinas señaladas en los casos de *Rivera Escuté*, 92 D.P.R. 765 (1965), *Escobedo* v. *Illinois*, 378 U.S. 478, ni con los casos de *Miranda* v. *Arizona*, 384 U.S. 436 y *Johnson* v. *New Jersey*, 384 U.S. 719.

■ El cuatro error no se cometió. Se alega que el tribunal incidió al denegar la moción de la defensa para disolver el jurado.

El planteamiento se hizo a base de que (1) el jurado señor Ángel M. Irizarry había hecho expresión en alta voz de que se trataba de un caso de asesinato en primer grado, antes de haber sido sometido el caso para deliberación, y (2) dicho jurado había hablado con el testigo principal de cargo, señor José Lugo Pérez.

Durante la investigación del incidente el señor jurado negó que se hubiera expresado sobre el caso, que le hubiera dicho a alguien que tenía opinión en el caso, ni que en el momento en que se le interrogaba tuviera opinión sobre el caso. No se presentó prueba para contradecirlo.

En cuanto a su conversación con el testigo de cargo José Lugo Pérez, el señor jurado declaró que al llegar se encontró con el testigo en la galería y le preguntó qué hacía aquí, contestándole el testigo, que venía de testigo en un caso de asesinato en primer grado; que el señor jurado siguió caminando y que no se hicieron comentarios sobre el caso.

Sentado a declarar el testigo José Lugo Pérez, éste manifestó que cree que saludó al jurado Sr. Irizarry pero que no le dijo que estaba de testigo en un caso de Asesinato en Primer Grado.

La defensa produjo también la declaración de la esposa del acusado al efecto de que ella había visto al testigo de cargo hablando con el señor jurado en dos ocasiones y aunque oyó que en la conversación se referían al acusado, no sabe de qué hablaron.

No hay base suficiente para concluir que se violaron las Reglas 132 y 133 de Procedimiento Criminal y no erró, por tanto, el tribunal sentenciador, al negarse a disolver el jurado.

Tampoco se cometió el quinto y último error.

El testimonio de la viuda de la víctima estuvo encaminado a establecer el móvil del delito. Si bien uno de los incidentes ocurridos entre la víctima y el acusado fue un tanto remoto, su admisión no constituyó un error de tal naturaleza que conlleve la revocación de la sentencia. Antes de la testigo relatar este incidente el juez ordenó que se retirara el jurado, pero el abogado de la defensa dijo "Está bien, que se quede el Jurado. Si ella estaba presente." De todos modos, a la luz de todas las circunstancias que surgen del récord, no estamos convencidos de que el acusado fuera

juzgado en este caso, con prueba de la comisión de otros delitos. La prueba de otros delitos admitida en evidencia, tendía a establecer el móvil del crimen, y caía por tanto dentro de la excepción a la regla de que sólo es admisible evidencia de los hechos imputados en la acusación.

*Por los motivos expuestos se confirmarán las sentencias apeladas.*

El Juez Asociado Señor Belaval no intervino.