EL PUEBLO DE PUERTO RICO, apelado, *v.* JOSÉ L. PADILLA SOTO, acusado y apelante.

*Número:* CR-93-150          *Resuelto:* 21 de abril de 1995

*Giovanni Irrizarry Sierra* y *Wanda T. Castro Alemán*, de la *Sociedad para la Asistencia Legal*, abogados del apelante; *Pedro A. Delgado Hernández, Procurador General,* y *Eunice Amaro Garay, Procuradora General Auxiliar,* abogados de El Pueblo.

## SENTENCIA

El Ministerio Público presentó acusación contra el apelante José A. Padilla Soto por violación al Art. 188A del Código Penal, 33 L.P.R.A. sec. 4306a (Fraude en la Ejecución de Obras de Construcción). Celebrado el juicio ante Jurado, fue encontrado culpable y sentenciado a cumplir un (1) año de prisión y a restituir al perjudicado la suma de cuatrocientos dólares ($400). Inconforme, acudió ante nos mediante recurso de apelación. Actualmente se encuentra bajo fianza en apelación. Luego de analizar la Exposición Narrativa de la Prueba (en adelante E.N.P.), concluimos que el apelante no tuvo la intención específica de defraudar que requiere el delito por el cual fue hallado culpable. Procede, por lo tanto, revocar la sentencia recurrida. Veamos.

I

El Sr. José L. Padilla Soto fue contratado por el Sr. Pedro Emilio Claudio Berenguer para que le construyera unos gabinetes de cocina y baño. Ambos se conocían desde jóvenes, cuando compartían jugando ajedrez todos los días

en la plaza de Guánica. Según expuso el señor Claudio Berenguer, el apelante era su amigo. E.N.P., pág. 5. El apelante se había dedicado a la ebanistería durante los últimos veintitrés (23) años. E.N.P., pág. 10. Tenía un taller que fue visitado por la Sra. Marta Maribel Montalvo del Valle, esposa del señor Claudio Berenguer.

Éstos pactaron el precio en tres mil quinientos treinta dólares ($3,530) y se le entregaron al apelante alrededor de dos mil doscientos dólares ($2,200) por adelantado. E.N.P., pág. 3. El término para completar la obra era hasta julio de 1992. E.N.P., págs. 4 y 12.

El apelante compró los materiales y comenzó a trabajar en la obra inmediatamente después de recibir el dinero. Al ver que el apelante trabajaba en ello constantemente, la señora Montalvo del Valle le entregó la llave de la casa para que "no tuviera que estar detrás de [ella] buscándo[la] por todo el pueblo para abrir." E.N.P., pág. 8.

Las partes acordaron luego una modificación al contrato, cambiando el tope por uno de cerámica. El 8 de julio de 1992 la señora Montalvo del Valle y el apelante fueron a la ferretería para comprar los materiales. Una semana más tarde, el apelante le informó que la cerámica se había despegado y ella visitó el taller, confirmando la situación alegada. E.N.P., pág. 7. La testigo manifestó que durante las dos primeras semanas de julio vio que la obra "iba bien" pero que luego vino el contratiempo de la cerámica. E.N.P., pág. 8. De aquí en adelante lo que ocurrió no está claro. Según la señora Montalvo del Valle, el apelante le pidió tiempo adicional para corregir el trabajo y ella se lo concedió. E.N.P., pág. 7. Conforme al testimonio del señor Claudio Berenguer, cuando se encontró con el apelante hablaron de hacer ajustes en el contrato, pero no acordaron nada pues se pelearon. E.N.P., pág. 4. Éste señaló, además, que durante el mes de agosto buscó al apelante infructuosamente y que en septiembre de 1992 tuvo que salir de

Puerto Rico por motivo de una enfermedad de su hija, sin poderle avisar antes al apelante, regresando el 24 de octubre de 1992.

El apelante, por su parte, testificó que el 23 de julio de 1992, en horas de la noche, acordó con el matrimonio Claudio-Montalvo que el tope de los gabinetes se terminaría en plástico laminado según lo acordado originalmente. E.N.P., pág. 13. Posteriormente fue a llevar los gabinetes, pero una vecina del matrimonio le informó que éstos se habían marchado a Estados Unidos, razón por la cual optó por no dejarlos. De todas formas, los gabinetes no podían ser instalados debido a que la casa no contaba con energía eléctrica. Desconociendo las circunstancias del viaje, el apelante utilizó parte de los gabinetes para otro cliente que contrató durante la ausencia del señor Claudio Berenguer. E.N.P., págs. 13–14. Cuando este último regresó de Estados Unidos exigió la instalación inmediata de los gabinetes. El apelante instaló el gabinete del fregadero, otro en forma de "L" y el del baño. Según el apelante, luego volvió para terminar, pero el señor Claudio Berenguer no le permitió entrar. E.N.P., pág. 15.

## II

El planteamiento central en el caso gira precisamente en torno al tipo de conducta que es necesario probar más allá de duda razonable para sostener una acusación por el delito de Fraude en la Ejecución de Obras de Construcción y el grado de prueba requerido para ello. Este delito fue incorporado en el Código Penal mediante la Ley Núm. 63 de 5 de julio de 1988, con el objetivo "de penalizar ... los actos de los contratistas, empresarios, ingenieros y arquitectos de obras que después de recibir el dinero para la ejecución de una obra no usan el dinero para ese propósito y no realizan ni completan el trabajo contratado". Exposición de Motivos de la Ley Núm. 63, *supra,* 1988 Leyes de

Puerto Rico 306. Así, dicho delito quedó tipificado en el Art. 188A del Código Penal, *supra*, de la manera siguiente:

> Todo empresario, ingeniero, contratista o arquitecto de obras, y todo aquel que fuere contratado o se comprometiere a ejecutar una obra y que, luego de recibir dinero como pago parcial o total para ejecutar el trabajo contratado, con la *intención de defraudar* incumpliere o contraviniere la obligación de ejecutar o completar la obra según pactada será sancionado con pena de reclusión que no excederá de seis (6) meses o multa que no excederá de quinientos (500) dólares o ambas penas a discreción del tribunal, si el valor de la obra pactada y no ejecutada fuere menor de doscientos (200) dólares.
>
> Si el valor de la obra pactada y no ejecutada fuere de doscientos (200) dólares o más será sancionado con pena de reclusión por un término fijo de dos (2) años. De mediar circunstancias agravantes, la pena fija establecida podrá ser aumentada hasta un máximo de tres (3) años; de mediar circunstancias atenuantes podrá ser reducida hasta un mínimo de un (1) año.
>
> En el caso de las personas jurídicas, cuando el valor llegare o excediere de doscientos (200) dólares, el tribunal impondrá una multa no menor de cinco mil (5,000) dólares. Además impondrá la pena de suspensión.
>
> En todos los casos, independientemente del importe del dinero recibido como pago parcial o total para ejecutar el trabajo contratado, el tribunal ordenará además que la persona convicta resarza a la parte perjudicada por el doble del importe del dinero recibido como pago parcial o total para ejecutar el trabajo contratado. (Énfasis suplido.)

Surge de lo anterior que nuestra Asamblea Legislativa, al tipificar este delito, no tuvo el objetivo de penalizar cualquier incumplimiento de un contrato de obra de construcción. En particular, el incumplimiento que se interesa penalizar es aquel que se realiza con la intención específica de defraudar a quien pagó para que se ejecutara la obra.

El delito que se establece en la disposición legal que nos ocupa sólo puede cometerse por personas que han sido contratadas para ejecutar una obra de construcción. Se configura el delito a base de los elementos siguientes: (1) Una definición de cuál es la obra de construcción y los términos y condiciones pactados para ejecutarla; (2) la persona con-

tratada debe haber recibido dinero como pago total o parcial para ejecutar la obra; (3) el incumplimiento por parte de dicha persona con los términos y condiciones para ejecutar la obra, y (4) la intención o propósito específico de la persona de defraudar a aquéllas con las que se obligó. *Pueblo v. Sierra Rodríguez*, 137 D.P.R. 903 (1995).

Se trata de un delito de intención específica que requiere para su configuración, además de la intención general dispuesta en el Art. 15 del Código Penal, 33 L.P.R.A. sec. 3062, que el imputado haya actuado con la intención específica de defraudar. Los delitos de intención específica son aquéllos cuyo resultado delictivo ha sido previsto y querido por la persona como consecuencia de su conducta. Art. 15(a) del Código Penal, 33 L.P.R.A. sec. 3062(a). Se trata de aquellas situaciones en que la persona tiene un deseo expreso de efectuar el acto y quiere la producción del resultado, el cual ratifica con su actuación. *Pueblo v. Narváez Narváez*, 122 D.P.R. 80, 90 (1988); *Pueblo v. Robles González*, 132 D.P.R. 554 (1993). Véanse sobre "intención general": *Pueblo v. Ruiz Ramos*, 125 D.P.R. 365 (1990); *Pueblo v. Castañón Pérez*, 114 D.P.R. 532, 539 (1983). Debido a esto, el grado de prueba requerido al Ministerio Público exige que se demuestre que el imputado incumplió con los términos y las condiciones de un contrato de obra de construcción y que lo hizo con el propósito definido y específico de defraudar a aquellas personas con las que se obligó. Nuestro ordenamiento penal define la conducta fraudulenta como aquélla "cometid[a] mediante ardid, simulación, trama, treta o mediante cualquier forma de engaño". Art. 7(15) del Código Penal, 33 L.P.R.A. sec. 3022(15).

Al considerar el requisito de intención de defraudar a otra persona, para fines de sostener una acusación por el delito de falsificación de documentos, Art. 271 del Código Penal, 33 L.P.R.A. sec. 4591, señalamos en *Pueblo v. Flores Betancourt*, 124 D.P.R. 867, 877 (1989), que "[d]efraudar

quiere decir privar a una persona de un bien, derecho o interés con abuso de su confianza o con infidelidad a las obligaciones propias". Indicamos, además, que "la intención de defraudar implica un propósito de obtener una ventaja material sobre [otra persona], o de inducirla a desprenderse de algún valor, derecho, privilegio u obligación ...". *Pueblo v. Flores Betancourt*, supra, pág. 877.

## III

De la prueba presentada por el Ministerio Público surge que el apelante fue contratado por el señor Claudio Berenguer para construir unos gabinetes de cocina y de baño. Para ello se le entregó un pronto de dos mil doscientos dólares ($2,200). Sobre estos puntos no existió controversia. Lo que sí se debatió fue el elemento de la intención específica de defraudar.

La presunción de inocencia es el principio cardinal en nuestro ordenamiento jurídico penal. Es en virtud de este principio que se le impone al Estado el peso de la prueba para demostrar la culpabilidad de un acusado. Por su trascendencia goza de rango constitucional y es uno de los derechos más fundamentales del acusado. Sec. 11 del Art. II de la Constitución del Estado Libre Asociado de Puerto Rico, L.P.R.A., Tomo 1.

Conforme con este principio, la Regla 110 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, establece el *quantum* de prueba necesario para derrotar esta presunción, como aquella que demuestre la culpabilidad más allá de duda razonable. Indica, además, que en caso de que exista duda razonable, en cuanto a la culpabilidad del acusado deberá absolvérsele.

La duda razonable es la que surge luego de una serena, justa e imparcial consideración de toda la evidencia del caso o de la falta de suficiente prueba en apoyo de la acusación. *Pueblo v. Malavé Sánchez*, 95 D.P.R. 395, 399

(1967). Reiteradamente hemos expresado que merece gran deferencia la aquilatación de la evidencia por el juzgador de los hechos. No obstante, dicho principio de respeto y consideración no ha impedido que revoquemos la convicción de un acusado cuando, luego de evaluar la prueba desfilada, hemos determinado que no se estableció la culpabilidad del acusado más allá de duda razonable. Véanse: *Pueblo v. Miranda Ortiz*, 117 D.P.R. 188 (1986); *Pueblo v. Álamo Álamo*, 116 D.P.R. 673 (1985); *Pueblo v. Sanabria Pérez*, 113 D.P.R. 694 (1983); *Pueblo v. Pagán Díaz*, 111 D.P.R. 608 (1981); *Pueblo v. Falú Fuentes*, 102 D.P.R. 809 (1974); *Pueblo v. Rivera Arroyo*, 100 D.P.R. 46 (1971); *Pueblo v. Ayala Ortiz*, 97 D.P.R. 168 (1969); *Pueblo v. Malavé Sánchez*, supra; *Pueblo v. Soto Zaragoza*, 94 D.P.R. 350 (1967); *Pueblo v. Luciano Arroyo*, 83 D.P.R. 573 (1961). Según dijimos en *Pueblo v. Carrasquillo Carrasquillo*, 102 D.P.R. 545, 551–552 (1974):

> Hasta tanto se disponga de un método infalible para averiguar sin lugar a dudas dónde está la verdad, su determinación tendrá que ser una cuestión de conciencia. Ese deber de conciencia no para en el fallo del tribunal sentenciador. Nosotros también tenemos derecho a tenerla tranquila.

La determinación de si se ha probado la culpabilidad más allá de duda razonable es, pues, revisable como cuestión de derecho. *Pueblo v. Miranda Ortiz*, supra; *Pueblo v. Pagán Díaz*, supra; *Pueblo v. Serrano Nieves*, 93 D.P.R. 56, 60 (1966).

En el caso de autos, el análisis de la E.N.P. nos lleva a concluir que el apelante no tuvo la intención específica de defraudar que requiere el Art. 188A, *supra*. Surge, con meridiana claridad, que los gabinetes de cocina fueron terminados en un momento dado, lo cual revela que el apelante contrató de buena fe la obra en cuestión. Posteriormente, por surgir el defecto en la pega y por el viaje imprevisto del matrimonio Claudio Montalvo, no pudieron ser entregados en su totalidad. El apelante desconocía cuándo regresaría

el matrimonio y por ello utilizó, lo que pudo haber sido un acto impropio, parte de los gabinetes para otra obra. Esta situación de hechos es litigable propiamente en el área civil bajo las doctrinas aplicables de derecho contractual. El Procedimiento Criminal no debe convertirse en sustituto de una acción civil por incumplimiento de contrato. *Pueblo v. Mattei Santiago*, 132 D.P.R. 18 (1992).

Por tal razón, entendemos que en el caso ante nos se aplicó erróneamente el Art. 188A, *supra*, el cual sólo debe ser utilizado en casos en que quede claramente establecido el propósito de cometer fraude. El simple hecho de no terminar una obra bajo contrato, o hacerlo defectuosamente, no puede interpretarse como equivalente a la intención específica de defraudar que constituye un elemento del delito imputado.

Por todo lo antes expuesto, *se dicta sentencia revocando la emitida por el Tribunal Superior, Sala de Ponce, el 22 de noviembre de 1993.*

Así lo pronunció, manda el Tribunal y certifica el señor Secretario General. El Juez Asociado Señor Fuster Berlingeri emitió un voto disidente, al cual se unieron los Jueces Asociados Señores Negrón García y Hernández Denton. El Juez Asociado Señor Rebollo López concurrió sin opinión escrita.

*(Fdo.)* Francisco R. Agrait Lladó
*Secretario General*

— O —

Voto disidente emitido por el Juez Asociado Señor Fuster Berlingeri, al cual se unen los Jueces Asociados Señores Negrón García y Hernández Denton.

No estoy de acuerdo con la determinación de la mayoría del Tribunal, formulada en la sentencia dictada en este caso, en cuanto a que el apelante no tuvo la intención es-

pecífica de defraudar a sus clientes que requiere el delito tipificado en el Art. 188A del Código Penal de Puerto Rico, 33 L.P.R.A. sec. 4306a. Me parece que la apreciación de los hechos del caso realizada por la mayoría ha estado muy matizada por su creencia, reiterada en la sentencia aludida, de que "el Procedimiento Criminal no debe convertirse en sustituto de una acción civil por incumplimiento de contrato". Sentencia, pág. 351. Por ello, la mayoría llega a una conclusión que es contraria al mandato legislativo incorporado en el referido artículo del Código Penal, lo que me obliga a disentir. Veamos.

## I

El Art. 188A del Código Penal de Puerto Rico, *supra*, fue incluido en nuestro ordenamiento jurídico en fecha reciente, el 5 de julio de 1988, con el propósito de darle protección efectiva al consumidor puertorriqueño frente a lo que el legislador consideraba que era una práctica abusiva, que ocurría impunemente muy a menudo en el país. Según los autores de la medida, los consumidores de Puerto Rico, particularmente los de clase media y clase media baja, sufren con frecuencia a causa de personas que han sido contratadas para realizar algún trabajo en la residencia del contratante, toman dinero de éste y luego intencionalmente no completan el trabajo contratado, defraudando impunemente a quien se lo había encomendado. *El legislador decidió que era necesario penalizar tal conducta porque los remedios civiles, que tenía hasta entonces el consumidor a su disposición para protegerse contra la misma, no eran adecuados.* La intención legislativa fue precisamente crear una *medida penal* que tuviese *la efectividad que carecía la acción civil.*

El incuestionable fin legislativo surge de la exposición de motivos de la ley que estableció el delito en cuestión, en la que se expresó lo siguiente:

Como es de conocimiento general, en Puerto Rico se registran casos de personas inescrupulosas que celebran contratos, muchas veces orales, para construir obras o reconstruir estructuras y, luego de recibir el dinero para ejecutarlas, desaparecen o las abandonan sin realizarlas o completarlas de acuerdo a los términos pactados con los clientes.

*Aun cuando los perjudicados pueden instar una acción civil por incumplimiento de contrato o iniciar aquellas acciones que le proveen otras leyes especiales, estos remedios resultan lentos o costosos.*

A fin de evitar y desalentar esta clase de conducta y de proveer un mecanismo más ágil y efectivo, para sancionar esta práctica, es necesario e imperioso tipificar y penalizar como delito los actos de los contratistas, empresarios, ingenieros y arquitectos de obras que después de recibir el dinero para la ejecución de una obra no usan el dinero para ese propósito y no realizan ni completan el trabajo contratado.

Debido a la gravedad de la situación la persona que incurra en esta actuación será sancionada del mismo modo que los Artículos 165 y 166 del Código Penal del Estado Libre Asociado de Puerto Rico penalizan a las personas convictas por apropiación ilegal y por apropiación ilegal agravada. A estos efectos se gradúa la pena a tenor con el importe del dinero recibido como pago total o parcial para ejecutar el trabajo contratado.

Además se dispone que en todos los casos el tribunal ordenará a la persona convicta del delito a resarcir a la parte perjudicada por el doble del importe del dinero recibido. *Ello no afecta la responsabilidad civil de las personas que incurran en la comisión del delito.* (Énfasis suplido.) Exposición de Motivos de la Ley Núm. 63 de 5 de julio de 1988, Leyes de Puerto Rico 307.

El fin legislativo aludido surge claramente también de las expresiones de algunos legisladores en el hemiciclo, como los siguientes:

Senador SILVA ... "Sin embargo, este proyecto tiene una justificación, y una justificación social... aunque sí, existe el procedimiento civil, del mecanismo civil para resarcir a estas personas, la realidad del asunto es que la cantidad envuelta que [sic] siempre es tan poca que se queda (sic) con la suya y hay una conducta consuetudinaria que las personas se dedican a esto a cogerle depósitos a las viejitas *para hacerle una obra ya sea arreglarle un techo o una marquesina una reja* y luego, no lo cumplen y sabiendo que le es más costoso el reclamo que, [sic] y el problema y el trabajo y la, [sic] y todo lo que conlleva ese

reclamo en la corte, en el Tribunal Superior Civil que lo que vale el reembolso en realidad."

Senador MIRANDA CONDE ... "Señor Presidente, yo viví ese drama ya hace unos cuantos años atrás. Hay algo que estamos pasando por alto cuando estamos hablando de esta medida, y es el hecho factual [sic], de que en Puerto Rico el mercado más grande no es de construir casas. El mercado más grande que hay aquí en Puerto Rico es de las mejoras de casas, y todas son residenciales. Y usualmente son de una sola planta. Usualmente son terreras y usualmente son en lugares de clase media baja y clase media.

Yo aprecio las delicadezas en cuanto a que si el castigo es inusitado, que si es cruel, que si el Jurado le va a coger pena, todo eso yo lo aprecio y lo respeto.... Pero aquí estamos obligados a pensar no solamente en las protecciones individuales constitucionales y en los sistemas procesales, criminales y todas esas cosas, sino pensar también [sic] la ciudadanía, que es donde estos "chiveros" hacen sus mayores estragos. Diario de Sesiones de 21 de abril de 1988, págs. 1156, 1159.

Como puede observarse, no cabe duda alguna de que el legislador quiso establecer una medida penal, que fuese más efectiva que la acción civil por incumplimiento de contrato, para desalentar así la práctica de aquellos que intencionalmente tomaban dinero de un consumidor para realizar una obra y luego no la completaban.

## II

Examinemos la prueba desfilada en el presente caso para decidir si el juzgador de los hechos tuvo base suficiente para encontrar al acusado culpable del delito en cuestión.

Según surge del Informe del Procurador General, que a su vez cita de la exposición narrativa de la prueba, el acusado se comprometió contractualmente a entregar los gabinetes de baño y cocina en cuestión el 15 de julio de 1992, pero no lo hizo, porque supuestamente la cerámica de dichos gabinetes se había despegado. El acusado entonces

solicitó una prórroga de dos semanas para completar el trabajo.

Pasadas las dos semanas adicionales, el acusado no entregó los gabinetes. Más aún, transcurrió todo el mes de agosto sin que éste cumpliese con su obligación. Durante ese tiempo Pedro Claudio, quien había contratado al acusado para que hiciera los gabinetes, intentó comunicarse con éste para saber del trabajo, pero nunca lo encontró en su taller. La esposa de Claudio sí logró hablar con el acusado en una ocasión durante ese mes y éste le indicó que no le había llevado los gabinetes porque no tenía transportación. La señora Claudio le ofreció entonces su guagua para ello y el acusado aceptó, pero aun así no entregó los gabinetes.

Durante el siguiente mes de septiembre el acusado tampoco entregó los gabinetes y Claudio intentó comunicarse con el acusado, sin éxito.

El 25 de septiembre de ese año Claudio y su esposa tuvieron que ausentarse de Puerto Rico a causa de la enfermedad de una hija. Claudio regresó a Puerto Rico el 24 de octubre de 1992 y al llegar a su residencia encontró que el acusado continuaba sin instalar los gabinetes, a pesar de que había tenido una llave de la casa de los señores Claudio para poder entregar dichos gabinetes, aunque los Claudio no estuviesen presentes.

El 27 de octubre Claudio presentó una querella en el Cuartel de la Policía de Guánica contra el acusado, por su constante incumplimiento con su obligación de entregar los gabinetes, por los cuales ya había recibido $2,300. Ello dio lugar a que el 30 de octubre un fiscal de la Fiscalía de Ponce se entrevistara con el acusado y le ordenara terminar los gabinetes dentro de un plazo de 25 días laborables.

El acusado no cumplió con las instrucciones que le impartió el Fiscal. A fines de noviembre entregó algunos gabinetes y a fines de diciembre les llevó otros, pero nunca entregó la obra completa que se le había encomendado. Por

ello, el 26 de enero de 1993, Claudio volvió a querellarse contra el acusado en el Cuartel de la Policía de Guánica. La policía no logró encontrar al acusado debido a que éste se había mudado de donde residía antes. Se consultó a Fiscalía sobre el particular, lo que dio lugar a que el asunto se sometiese ante el Tribunal de Distrito de Yauco.

El acusado nunca completó el trabajo.

## III

Como puede apreciarse de un análisis imparcial y objetivo de la prueba, aunque el apelante obtuvo una cantidad significativa de dinero del querellante, *reiteradamente* le dio largas al asunto de realizar el trabajo encomendado, valiéndose de tretas dilatorias para ello. Abusó de la confianza que Claudio había puesto en él y no cumplió con la obligación contraída. Su conducta no sólo apareja una clara intención de defraudar, según lo hemos definido en *Pueblo v. Flores Betancourt*, 124 D.P.R. 867 (1989), sino que además constituye precisamente el tipo de actuación que el legislador pretendió penalizar. Como bien señala el Procurador General en su informe, el caso de autos trata de la actuación de una persona que obtiene dinero de un ciudadano y después, intencionalmente, mediante diversas estrategias, no realiza el trabajo conforme lo acordado, retiene el dinero y vence al cliente con la fuerza del pasar del tiempo. Eso fue exactamente lo que el legislador prohibió mediante el Art. 188A del Código Penal, *supra*, según reseñado antes.

La prueba desfilada refleja claramente la intención de defraudar del apelante que requiere el delito en cuestión. Si la mayoría de este Tribunal no lo entiende así, es porque erradamente insiste en pensar que el incumplimiento contractual no debe ser materia del Derecho Penal. Tal, sin embargo, no es el juicio del legislador, quien tiene la facul-

tad de definir delitos en nuestro sistema de gobierno. Podemos diferir respecto a la sabiduría del legislador cuando éste aprueba leyes como las que tenemos ante nos ahora, pero, salvo defectos constitucionales, tenemos el deber de aplicar aun las que no consideramos adecuadas. Como la mayoría en la sentencia ante nos sigue un curso distinto al que creo procedente, DISIENTO.