Córdova Arone, Juez Ponente
TEXTO COMPLETO DE LA SENTENCIA
La Sentencia apelada fue emitida por el Tribunal de Primera Instancia, Sala Superior de Aguadilla, el 25 de septiembre de 2000, y en su Apelación ante este tribunal, el apelante Virgilio Acosta Murillo expresa su inconformidad con la misma alegando que el Ministerio Público no demostró la intención específica del acusado según lo requiere el artículo 188-A del Código Penal de Puerto Rico. (33 L.P.R.A. 4306a). La exposición de la prueba que presentara el apelante, el 20 de febrero de 2001, fue estipulada por el Pueblo de Puerto Rico el 16 de febrero de 2001. Los autos originales fueron elevados con la prueba documental y fotografías estipuladas presentadas durante el juicio, según lo habíamos ordenado. Las partes han presentado sus respectivos alegatos, por lo que estamos en condiciones de resolver, lo que procedemos hacer.
I
Veamos los hechos según surgen de la exposición narrativa y los alegatos de las partes.
El testigo Higinio Méndez Babilonia, ingeniero civil, otorgó un contrato con la Sra. Nancy Soto Vélez, su prima, para realizar los trámites correspondientes en la preparación de los planos de construcción de la vivienda de ella, una casa terrera, para presentarlos ante A.R.P.E.. Los planos fueron aprobados. El acusado Acosta Murillo fue contratado el 31 de diciembre de 1996 por Soto Vélez para construir la vivienda bajo la supervisión de Méndez Babilonia quien visitó la obra en varias ocasiones. El contrato establece un desglose de partidas y forma de pago ascendiendo a un total de $30,860.32. El contrato establece un período de construcción de 80 días a partir del día 7 de enero de 1997 con una posible extensión de 40 días. Provee, además, que si la propietaria requiere cambio o aclaración a lo estipulado, será por su cuenta y tendrá un plazo de un (1) año a partir de la terminación de la obra para reembolsar a "el contratista" de dichos gastos adicionales.
Originalmente, la construcción era de una planta, con dos dormitorios, sala, comedor, cocina, baño y un balcón frontal. En la etapa de los cimientos, se enmendaron los planos para una residencia de dos plantas, la cual se haría en columnas. Estos planos enmendados fueron aprobados por A.R.P.E. Méndez Babilonia preparó un estimado, pero no se sabe la fecha en que fue redactado. Méndez Babilonia declaró que el costo total de la *715 construcción, incluyendo las enmiendas era de $40,000.00 a $41,000.00. Se aclaró que el precio total de la obra resultó ser $38,655.00, y cuando se paralizó la obra, estaba terminada un 90% y en dinero faltaba $5,500.00 en obras adicionales. La obra fue paralizada, pero tampoco se sabe la fecha exacta cuando se paralizó. El estimado referido se admitió como Exhibit 1, mostrando un estimado por obras descritas de $19,450.00. Al paralizarse la obra se preparó otro estimado admitido como Exhibit 2, que muestra un estimado por obras adicionales de $5,500.00. Este es el estimado de lo que faltaba por hacerse cuando la obra se paralizó, habiéndose realizado $33,155.00 del costo de la obra, y según el testigo Méndez Babilonia, la propietaria y el acusado acordaron que éste no iba terminar la obra. Faltaba por hacer el piso de cerámica, piso de baño, instalación de servicio sanitario, los closets de los dormitorios, las barandas de la escalera y el balcón, arreglo de mocheta y empañetado, pintura, trabajo para construir el pedestal para el contador de servicio eléctrico, tuberías sanitarias, alambrados, instalación de rosetas y receptáculos.
La propietaria declaró que le ha entregado al acusado la suma de $38,763.32. Se efectuaron cambios ascendiendo a la cantidad de $8,000.00 y el acusado recibió $7,025.32 y le debe actualmente la cantidad de $1,087.00, cantidad que le entregará cuando reciba la llave de la casa.
Se presentaron fotos admitidas por estipulación mostrando la condición de la casa en la fecha que se celebró la vista, el 24 de enero de 2000. Estas fotos se tomaron en abril de 1999.
La testigo Doña Nancy declaró que le dio $2,000.00 al acusado para las losetas y que no entregó las mismas y además expresó que su casa no se puede vivir, falta la loseta de la casa.
Basándose en esta prueba, el tribunal de primera instancia determinó o concluyó que el acusado cometió el delito imputado, violando el Art. 188 (A) y que la prueba del Pueblo estableció la intención específica de cometer fraude.
II
La controversia, según hemos expresado anteriormente, se circunscribe a si se estableció una intención específica de cometer fraude según se requiere para violar el Art. 188 (A), si el simple hecho de no cumplir con el contrato al no completar las obras en el tiempo pactado o haber hecho dichas obras inadecuadamente, equivale a la intención específica que se exige por el estatuto. El acusado sostiene que no. El Pueblo de Puerto Rico argumenta que la obra se debió haber terminado en 80 días y no se ha terminado aún (a la fecha de la vista), que la propietaria perjudicada entregó sustancialmente el dinero pactado y que el acusado dice que va a realizar la construcción de la obra y no lo hace. Que estos hechos demuestran la intención específica que el estatatuto requiere. Veamos.
III
En lo pertinente, el Artículo 188 A que se adicionó al Código Penal el 5 de julio de 1988 establece que "[T] odo empresario, ingeniero, contratista o arquitecto de obras y todo aquél que fuere contratado o se comprometiere a ejecutar una obra y que, luego de recibir dinero como pago parcial o total para ejecutar el trabajo contratado con la intención de defraudar incumpliere o contraviniere la obligación de ejecutar o completar la obra según pactada, será sancionado...".
Repasemos ahora la prueba presentada antes relacionada para ver si los elementos requeridos por la parte del estatuto se cumplieron.
Se probó que el acusado, como contratista, se comprometió a construir una obra definida, "aunque sujeta a cambios improvistos en un término fijo. Se estableció que la obra no se había terminado cuando se presentó la denuncia como tampoco cuando se celebró la vista del caso. El acusado recibió substancialmente el pago pactado, incluyendo el trabajo adicional requerido. Se le adeudan unos $1,087.00, pero faltan por hacer obras por $5,500.00. Se le pagó por losetas que aún retenía cuando fue denunciado y aún a la fecha que se celebró el *716 juicio. Es decir, recibió el dinero pactado para ejecutar una obra y no la terminó según también lo pactó. La prueba presentada es algo confusa en cuanto a lo que se acordó finalmente pagarle al acusado, debido a unos cambios que hubo. Estos hechos fueron probados y realmente no están controvertidos. Falta ahora determinar si se probó que el acusado al actuar de la manera establecida y probada cometió el delito imputado. Si sus actos establecen una intención específica para defraudar a la perjudicada, nuestra repuesta es que no, por lo que se revoca el recurso instado.
Es norma jurisprudencial reiteradamente establecida aquélla que postula que a nivel apelativo no se intervendrá con la adjudicación de credibilidad efectuada por el juzgador de los hechos, en ausencia de error manifiesto, pasión, prejuicio o parcialidad. Trinidad v. Chade, 2001 J.T.S. 10, a la pág. 793. No obstante, dicho principio de respeto y consideración no ha impedido que revoquemos la convicción de un acusado cuando, luego de evaluar la prueba desfilada, hemos determinado que no se estableció la culpabilidad del acusado más allá de la duda razonable. Veanse: Pueblo v. Miranda Ortiz, 117 D.P.R. 188 (1986); Pueblo v. Alamo Alamo, 116 D.P.R. 673 (1985). Nuestro más alto foro, en Pueblo v. Acevedo Estrada, 150 D.P.R._, 2000 J.T.S. 22, a la pág. 573, expresa y citamos: "Específicamente, en casos de naturaleza penal, hemos requerido, para que pueda obtenerse una convicción válida en derecho que derrote la presunción de inocencia que asiste a todo acusado, que es requisito sine qua non que el Estado presente prueba respecto a cada uno de los elementos del delito, su conexión con el acusado y la intención o negligencia criminal de este último." Poco más adelante expresa, la prueba del Ministerio Público, "tiene que ser satisfactoria, es decir, prueba que produzca certeza o convicción moral en una conciencia exenta de preocupación o en un ánimo no prevenido". Pueblo v. Rodríguez Román, 128 D.P.R. 121, 131 (1991).
Según expuesto, el Art. 188A, supra, es un delito de intención específica. Además de la intención general del Art. 15 del Código Penal, 33 L.P.R.A. see. 3062. Pueblo v. Sierra Rodríguez, 137 D.P.R. 903 (1995), a la pág. 910. Los delitos de intención específica son aquéllos cuyo resultado delictivo ha sido previsto y querido por la persona como consecuencia de su conducta. Art. 15(a) del Código Penal, 33 L.P.R.A. sec. 3062(a). Se le exige al Ministerio Público que su prueba demuestre que el imputado incumplió con los términos y las condiciones de un contrato de obra de construcción y que lo hizo con el propósito definido y específico de defraudar a aquellas personas con las que se obligó. Nuestro ordenamiento penal define la conducta fraudulenta como aquélla "cometida mediante ardid, simulación, trama, treta o mediante cualquier forma de engaño". Art. 7 (15) del Código Penal, 33 L.P.R.A. see. 3022(15). Pueblo v. Padilla Soto, 138 D.P.R. 344, a la pág. 348.
La presunción de inocencia le impone al Estado el peso de la prueba para demostrar la culpabilidad de un acusado. El quántum de prueba necesario para derrotar esta presunción de inocencia, es aquélla que demuestre la culpabilidad más allá de duda razonable. La duda razonable es la que surge luego de una serena, justa e imparcial consideración de toda evidencia del caso o de la falta de suficiente prueba en apoyo de la acusación. Pueblo v. Malavé Sánchez, 95 D.P.R. 395, 399 (1967). Siendo la apreciación de la prueba desfilada en un juicio una cuestión entrelazada de hecho y de derecho determinar si se probó la culpabilidad de un acusado más allá de duda razonable, es revisable como cuestión de derecho. Pueblo v. Rivero Lugo y Almodóvar, 121 D.P.R. 454, 472 (1988).
Apliquemos estos principios a los hechos expuestos para determinar si hubo intención específica para defraudar a la perjudicada. La prueba mostró que a pesar que se tuvo que hacer unos cambios, el problema comienza cuando la obra estaba 90% terminada. Las fotos estipuladas muestran lo que faltaba hacerse. El testigo Méndez Babilonia detalló el trabajo que faltaba para terminar. La Sra. Nancy Soto Vélez declaró que los problemas con la construcción comenzaron el 29 de septiembre de 1999. Recordemos que el contrato de construcción se otorgó el 31 de diciembre de 1996, unos dos años y nueve meses antes, proveyendo éste un período de construcción de 80 días. Recordemos también que hubo cambios que atrasaron la obra, cuyos atrasos no son atribuibles al acusado. La perjudicada le dio $2,000.00 al acusado para comprar las losetas y a la fecha del juicio, el 24 de enero de 2000, no se habían entregado las losetas. Al acusado se le debía una suma de dinero, aunque se le había pagado casi todo de lo pactado según lo declaró la perjudicada. Más de dos años *717 después aún no había terminado la obra. Surge de la exposición narrativa que la perjudicada declaró y su declaración no fue refutada, que acordó con el acusado que éste no iba a terminar la construcción. (E.N., pág. 4) No cabe duda que el contratista después de ser compensado, no abandonó la obra, ya que fue por acuerdo mutuo-relevado de terminar la misma. Repetimos, parte del tiempo que transcurrió en exceso de los 80 días que establece el acuerdo entre las partes se le puede atribuir a causas ajenas al acusado, aunque es igual de cierto que otra parte del tiempo le es atribuible al acusado. Debemos hacer la siguiente observación según de los autos, originales del caso. Antes de celebrarse el juicio, las partes estuvieron dialogando con fines de llegar a un acuerdo en cuanto al dinero adeudado y las obras pendientes. Durante este intervalo de tiempo el= acusado le ha devuelto dinero a la perjudicada y su deuda con la perjudicada está reducida y actualmente la suma que se le tiene que devolver, según nuestros cálculos, es una pequeña. El comportamiento del acusado, aunque a veces errático, ha sido de cumplir y no ha evadido su compromiso, lo que muestra su falta de intención para defraudar a la perjudicada.
Al analizar el fin legislativo que surge de la exposición de motivos de la ley que estableció el delito en cuestión y los comentarios de algunos de los legisladores, observamos que no hay duda alguna que el legislador quiso establecer una medida penal, que fuese más efectiva que la acción civil por incumplimiento de contrato para desalentar así la práctica de aquéllos que intencionalmente tomaban dinero de un consumidor para realizar una obra y luego no la completaban. Pueblo v. Padilla Soto, supra, pág. 354.
Pero ese no es el caso que tenemos ante nos. En su escrito, el apelado, en más de dos ocasiones, enfatiza que el acusado prácticamente abandonó la obra, que no completó la obra. Pero en ningún momento hace referencia al testimonio de la perjudicada que indica que acordó con el acusado que éste no terminara la obra, o sea, el acusado no abandonó la obra y si no la terminó fue porque así lo acordó con la perjudicada.
El delito se comete (el fraude intencional) si el acusado, en este caso el contrátista contratado, incumple o contraviene su compromiso a ejecutar una obra determinada en cierto también determinado tiempo con intención de defraudar. Los hechos probados no muestran, como antes señalado, que el acusado abandonara la obra o que las tardanzas ocurridas fueran tardanzas deliberadas por parte del acusado. La realidad fáctica fue que las tardanzas se debieron por razones atribuibles a la perjudicada y al acusado, pero la pmeba aportada no estableció que su incumplimiento fue con la intención de defraudar.
Evaluado el caso y examinada la pmeba presentada, tenemos serias dudas razonables y fundadas sobre la culpabilidad del acusado. Pueblo v. González Román, 138 D.P.R. 691 (1995). La conducta fraudulenta que define nuestro ordenamiento penal requiere que el acusado cometa el crimen imputado, mediante ardid, simulación, trama, treta o mediante cualquier forma de engaño. Código Penal, supra. La pmeba desfilada no estableció esto, no estableció que el acusado tuvo un propósito de obtener una ventaja material sobre la perjudicada, o de inducirla a desprenderse de algún valor, derecho, privilegio u obligación. El delito imputado no se configuró.
Por los fundamentos aquí expresados, se revoca la Sentencia apelada y se absuelve al apelante.
La Juez López Vilanova concurre con el resultado.
Notifíquese.
Lo acordó y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaría General