El Pueblo de Puerto Rico, demandante y apelado, *v.* Confesor Falú Fuentes, c/p Confe, acusado y apelante.

*Número:* CR-73-60        *Resuelto:* 12 de noviembre de 1974

*José M. Sagardía Pérez,* abogado del apelante; *Myriam Naveira de Rodón, Procuradora General, Peter Ortiz, Subprocurador General,* y *Héctor R. Orlandi Gómez, Procurador General Auxiliar,* abogados de El Pueblo.

El Juez Asociado Señor Irizarry Yunqué emitió la opinión del Tribunal.

Se imputó al apelante la comisión de tres infracciones al Art. 29 de la anterior Ley de Narcóticos de Puerto Rico, 24 L.P.R.A. sec. 974z, consistentes en poseer, vender, y ocultar y transportar heroína. Juzgado por tribunal de derecho fue hallado culpable y sentenciado a cumplir de cinco a diez años

de presidio en cada cargo, a cumplirse concurrentemente entre sí. Señala la comisión de varios errores. Los dos primeros atacan la suficiencia en Derecho de la prueba. Ambos se cometieron y justifican la revocación.

■ Veamos la prueba. Según el testimonio del agente Rivera, única prueba presentada por el fiscal conectando al apelante con la alegada transacción delictiva, ésta ocurrió el 30 de mayo de 1971. Hacía tres años que el agente trabajaba en la persecución del tráfico ilegal de drogas como miembro de la División de Drogas y Narcóticos de la Policía. Su identidad como tal no era un secreto. Declaró que antes del 30 de mayo de 1971 había jurado denuncias y había declarado como testigo de cargo en procesos por violación a la Ley de Drogas en las Salas de lo Criminal de Hato Rey y de la Parada 18 del Tribunal Superior, en lo que él mismo llamó "un sinnúmero de ocasiones" que dijo podrían ser "más de cinco, seis, siete, ocho, nueve, diez, más de veinte." No obstante, no prestó declaración jurada sobre la transacción realizada con el apelante hasta más de seis meses después de ocurrida. Su explicación para la dilación fue que se hubiese descubierto y tenía que mantener su condición de encubierto. Esto a pesar de que, en relación con una transacción similar con el mismo acusado ocurrida el primero de junio de 1971, prestó declaración y se determinó causa probable contra el apelante el 24 de agosto siguiente y se efectuó su arresto el 31 de ese mismo mes. Bajo tales circunstancias es dudoso que la razón para no prestar declaración hasta seis meses después en el caso del 30 de mayo fuera la de no descubrirse. La razón dada por el testigo para justificar este proceder, consistente en afirmar que sometió para causa probable todos los casos contra el apelante en la misma fecha en diciembre, es evidentemente inverosímil.

■ Pero ahondemos en su testimonio. Conoció al acusado en la ocasión de la alegada transacción del 30 de mayo en Saint Just, que es parte del área metropolitana de San Juan en que están las Salas de Hato Rey y la Parada 18, al serle presentado

por un confidente. Como ocurre a menudo en estos casos, el agente dice no conocer el nombre del confidente ni su dirección, cosa que es permisible creer cuando se trata de agentes aislados, ya que es de suponer que la Policía tome medidas para que la identidad de los confidentes no se conozca generalmente en la totalidad del Cuerpo. Alguien en la Policía, sin embargo, tiene que saber el nombre y las señas de todo confidente. No concebimos que se haga uso de tales personas para la tarea de descubrir y perseguir a los traficantes de drogas y no sepa la Policía quiénes son esas personas que en forma tan efectiva ayudan a lograr el éxito de esa tarea. Aceptamos que se mantenga la confidencialidad de la identificación de esas personas cuando su actuación no pasa de ser la de meros informantes. Compárense *Pueblo* v. *Acosta Escobar*, 101 D.P.R. 886 (1974) y *Pueblo* v. *López Rivera*, 91 D.P.R. 693 (1965). No aceptamos que para proteger la identidad del confidente se recurra, en aquellos casos donde la defensa tiene derecho a información sobre el particular, a la socorrida excusa de que se le conoce únicamente por un apodo. Véase *Pueblo* v. *Beltrán Faría*, 102 D.P.R. 783 (1974).

Todas estas circunstancias tienen un gran peso cuando se trata de aquilatar el testimonio de un agente encubierto. Advertimos en *Pueblo* v. *Ayala Ruiz*, 93 D.P.R. 704 (1966), la necesidad de rodear el testimonio del agente encubierto de detalles que lo hagan confiable. Repetimos en *Pueblo* v. *Soto Zaragoza*, 94 D.P.R. 350 (1967), nuestra preocupación de que el Pueblo pierda la confianza en la justicia por el uso de agentes encubiertos inescrupulosos que logren el encausamiento de ciudadanos asociados al delito por su mera reputación. Eso aún nos preocupa y nos preocupará siempre. Véanse *Pueblo* v. *González del Valle*, 102 D.P.R. 374 (1974), *Pueblo* v. *Rosario Torres*, 101 D.P.R. 840 (1973). En *Rosario Torres*, en que el agente encubierto tardó cinco meses en prestar su declaración jurada, dijimos por voz del Juez Asociado Señor Díaz Cruz:

"Estamos plenamente enterados de la gran utilidad del agente encubierto que se adentra en el corazón mismo de la conspiración y penetra los más oscuros recintos del crimen organizado y con gran exposición de su vida saca los infractores de la sombra y clandestinidad para traerlos a responder por sus actos en sala de justicia. No estamos, por tanto, preconizando, ni siquiera alentando el abandono de este método de investigación y procesamiento. Confíamos en que los hombres seleccionados para esta labor sean de integridad sin tacha. Pero habida cuenta de la enorme influencia que sobre el destino del encausado puede generar el testimonio del agente, en reverencia a la libertad de los seres humanos con quienes interviene, se impone una aumentada exigencia y un mayor rigor en la estimación por las cortes de las actuaciones del agente encubierto. La triste experiencia con agentes inescrupulosos y prevaricadores ha puesto toda la organización bajo severa evaluación y se hace necesario elevar las normas mínimas de credibilidad. De lo contrario degradaríamos la libertad."

En adición a esas circunstancias que debemos tener presentes al enfrentarnos al testimonio del agente Rivera, se desmorona su castillo de credibilidad en este caso ante las inconsistencias de su testimonio. El agente declaró que al día siguiente de ocurrir la transacción rindió a su superior un informe confidencial en que hizo constar que la persona a quien le compró la heroína la noche antes, identificado por el apodo de Confe, era un hombre de unos 29 a 35 años de edad. El acusado sólo contaba 20 años de edad. Indicó en ese informe que su peso era de unas 149 libras. El acusado pesaba 170 libras. Dejó en blanco los espacios en que debió indicar el color de los ojos y del pelo. No explicó esa omisión. Indicó la estatura de Confe como cinco pies cinco pulgadas. El acusado mide cinco pies diez pulgadas, la misma estatura del agente Rivera.

Aceptamos que una persona pueda equivocarse al calcular la edad, peso y estatura de otro. Pero el que aquí hizo el cálculo no es una persona corriente en estos menesteres. Se trata de un agente de la Policía, con tres años de experiencia en la persecución del tipo de delito que aquí nos ocupa, entre-

nado especialmente para hacer esos cálculos y presentar informes exactos de lo que observa. Si se tratase de pequeños errores en sus cálculos sería pasable. Pero aquí se trata de equívocos imposibles de superar. Rivera no era aquí un casual observador de unos hechos. El provocó la transacción con esa persona que dijo no conocer y era su deber vaciar los datos precisos en el informe que debía hacer y retenerlos para en su día prestar testimonio en el juicio que se siguiera al acusado. La descripción de éste, por el hecho de no serle conocido hasta ese momento, tenía que ser la más exacta posible. Jamás podría identificarse al acusado aquí apelante, un joven de 20 años de edad, de 170 libras de peso y de cinco pies diez pulgadas de estatura como el hombre que describió el agente Rivera en su informe. Añádase a eso que en el informe sobre la transacción del día primero de junio con el mismo acusado, el agente Rivera da una descripción que no coincide con la que hizo en su informe del día anterior—31 de mayo— ni con la realidad física del apelante.

Hay otras inconsistencias en el testimonio del agente Rivera. No creemos necesario señalar más. Las indicadas bastan para descartar su testimonio y absolver al acusado apelante.

*Se dictará sentencia de conformidad con lo aquí expresado.*