EL PUEBLO DE PUERTO RICO, apelado, *v.* JULIO ÁLAMO ÁLAMO, acusado y apelante.

*Número:* CR-84-16      *Resuelto:* 25 de noviembre de 1985

674

*Federico Torres Jiménez,* abogado del apelante; *Roberto Schmidt Monge, Procurador General* y *Rose Mary Corchado Lorent, Procuradora General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ emitió la opinión del Tribunal.

La figura del agente encubierto ha sido objeto de atención en diversas ocasiones por parte de este Tribunal, en especial, en lo referente a la utilización de dicho personal policiaco en casos relacionados con el tráfico ilegal de narcóticos y casos al amparo de las disposiciones de la Ley Núm. 220 de 15 de mayo de 1948, conocida como la "Ley de la Bolita". Véanse, entre otros, *Pueblo v. Seda,* 82 D.P.R. 719 (1961); *Pueblo v. Luciano Arroyo,* 83 D.P.R. 573 (1961); *Pueblo v. Ayala Ruiz,* 93 D.P.R. 704 (1966); *Pueblo v. Soto Zaragoza,* 94 D.P.R. 350 (1967); *Pueblo v. Rosario Torres,* 101 D.P.R. 840 (1973); *Pueblo v. González del Valle,* 102 D.P.R. 374 (1974); *Pueblo v. Almodóvar,* 109 D.P.R. 117 (1979), y *Pueblo v. Sanabria Pérez,* 113 D.P.R. 694 (1983).

En *Pueblo v. Almodóvar,* ante,[1] no obstante reafirmar una vez más la necesidad y razón de ser de dicha práctica investigativa por parte de la Policía de Puerto Rico, realizamos un comprensivo y detallado historial de nuestra jurispruden-

_____

[1] Caso por infracción a la Ley de Bolita.

cia, demostrativo el mismo de nuestra continua preocupación por minimizar —a través del establecimiento de normas y guías— la posibilidad de que un inocente pueda perder su libertad y reputación a base de la declaración falsa de un agente encubierto inescrupuloso. Reiteramos que en casos de esta naturaleza "la convicción no puede fundarse en el testimonio único del agente encubierto cuando la declaración se limita a relatar los *particulares mínimos* para establecer la infracción" y que dicho testimonio "debe rodearse en estos casos de los *detalles imprescindibles* que nuestra jurisprudencia señala para impartirle el grado óptimo de credibilidad". (Énfasis suplido.) Instamos, por último, al Legislador y al Ejecutivo a aprobar legislación —en relación con la Ley de la Bolita— exigiendo "mayor control de las actividades en este campo del agente encubierto, tal como se hizo parcialmente en el caso de la Ley de Sustancias Controladas". Íd., págs. 123-126.

I

Las Ramas Legislativa y Ejecutiva, en acción obviamente motivada por nuestra decisión en el citado caso de *Pueblo* v. *Almodóvar*, ante, prontamente aprobaron la Ley Núm. 54 de 27 de mayo de 1980. Dicha ley, en lo pertinente, dispone:

> Toda persona que intervenga o participe como agente encubierto en cualquier transacción o venta de material relacionado con los juegos generalmente conocidos como "Bolita", "Bolipool", combinaciones clandestinas relacionadas con los *Pools* o bancas de los hipódromos de Puerto Rico y loterías clandestinas; o que sorprendiere a cualquier persona portando o conduciendo o que tuviere en su poder en cualquier concepto, cualquier papeleta, billete, *ticket,* libreta, lista de números o letras, boletos o implementos que pudieren usarse en dichos juegos ilegales bajo las disposiciones de las secs. 1247 a 1257 de este título, deberá prestar ante un fiscal, dentro de un término no mayor de 120 horas siguientes a haberse consumado dicha transacción o venta o cualquiera de las acciones delictivas antes mencionadas, una declaración jurada sobre su participación en la misma y los

hechos pertinentes a ésta, incluyendo el término durante el cual se extendió la investigación, el área cubierta, los resultados obtenidos y las causas presentadas contra otros infractores atrapados en la redada, así como la identidad de otras personas que realizaron transacciones con el acusado observadas por dicho agente encubierto. El término de 120 horas aquí establecido será de estricto cumplimiento, excepto que se demuestre justa causa para una demora en someter la declaración jurada dentro del término antes indicado.

Cuando el Tribunal determinare en la vista preliminar que dicha declaración jurada no fue prestada, o que habiéndose prestado fuera del término de 120 horas no hubo justa causa para la dilación, ni dicha declaración jurada ni el testimonio del agente encubierto podrán ser presentados en evidencia.

En la determinación de justa causa se tomará en consideración, entre otros factores, el que la investigación no hubiere concluido dentro del término antes indicado. (Énfasis suplido.) 33 L.P.R.A. sec. 1250a.

## II

En el presente caso el Ministerio Público radicó una acusación contra el aquí apelante Julio Álamo Álamo por una alegada infracción a la Ley de la Bolita consistente la misma en que supuestamente le vendió al agente encubierto Gabriel A. Medina López un número por una determinada cantidad de dinero, número que se puede utilizar y/o está conectado con el juego de la bolita y/o "bolipul".

Habiendo comenzado a declarar el referido agente encubierto en el juicio que a esos efectos se le celebrara al apelante ante el Tribunal Superior de Puerto Rico, Sala de Bayamón, la representación legal de éste planteó que "de conformidad con el texto de la declaración jurada que en ese acto le había suministrado el Fiscal, *la misma no reunía los requisitos de la Ley Número 54 de 27 de mayo de 1980*, que enmienda la Ley de Bolita, *toda vez que* de la referida declaración jurada surge que el agente encubierto alega que observó a otras personas llevar a cabo transacciones con el acusado en su presencia,

mas no señala la identidad de dichas personas en la declaración jurada, *lo que tiene el efecto legal de que su testimonio no sea admisible en evidencia*". (Énfasis suplido.)

Declarada preliminarmente sin lugar la cuestión planteada por el juez que presidía la vista en su fondo del caso, (²) la defensa reprodujo el planteamiento al finalizar de declarar el encubierto, toda vez que el mismo en "su testimonio oral señaló que no conoce a dichas personas, ni recuerda ninguna de ellas por apodos o por nombre".

El referido magistrado declaró sin lugar el planteamiento de la defensa por entender "que la declaración jurada cumple sustancialmente con lo que establece la Ley". Habiendo sido el Sr. Julio Álamo Álamo declarado culpable y convicto en relación con la infracción a la Ley de Bolita que se le imputara, acudió ante este Tribunal mediante la radicación en tiempo del correspondiente recurso de apelación. En el mismo se le imputa al tribunal de instancia la supuesta comisión de tres errores, los cuales se pueden sintetizar en dos, (³) a saber: el haber errado al no suprimir la declaración jurada, y el testimonio prestado en corte abierta, del agente encubierto por cuanto de los mismos no surge "dato alguno en torno a la identidad de, las personas que supuestamente realizaron dichas transacciones con el acusado" y el haber declarado culpable al apelante por cuanto la "evidencia desfilada no reúne los requisitos jurisprudenciales establecidos" por este Tribunal en casos de esta índole.

### III

Un examen de la declaración jurada que el agente encubierto prestara en el presente caso en cumplimiento de lo prescrito por la citada Ley Núm. 54 y de la exposición narra-

---

(²) Hon. Jorge Busigó Cifre, Juez.

(³) Los primeros dos señalamientos de error versan básicamente sobre la misma cuestión.

tiva de la prueba que obra en autos efectivamente demuestra que el agente no ofreció dato alguno sobre la identidad de las personas con quien el apelante alegadamente, y en la inmediata presencia del agente, realizó transacciones relacionadas con el juego ilegal de la bolita. ¿Significa ello, como reclama el apelante, que la omisión de esa "información" —o de cualquiera otra a la que hace alusión la referida Ley Núm. 54— tiene el efecto de hacer inadmisible ipso facto la declaración y el testimonio del agente encubierto? Resolvemos en la negativa.

■ Es cierto, como hemos visto, que la Ley Núm. 54 dispone que en la declaración jurada que preste el agente se deberán especificar "los hechos pertinentes" relativos a la acción delictiva *"incluyendo* el término durante el cual se extendió la investigación, el área cubierta, los resultados obtenidos y las causas presentadas contra otros infractores atrapados en la redada, *así como la identidad de otras personas que realizaron transacciones con el acusado observadas por dicho agente encubierto".* (Énfasis suplido.)

Resolver, sin embargo, que la información que enumera la citada Ley Núm. 54 es "mandatoria o de cumplimiento estricto", esto es, que de no ofrecerse la misma procede ipso facto la supresión de la declaración del agente encubierto, nos conduciría con toda probabilidad a la situación inaceptable que precisamente hemos querido evitar y, en segundo lugar, abriría la puerta a que personas culpables de violar la citada Ley Núm. 220 puedan escapar impunemente. Ello es así por cuanto si exigimos que en todos los casos se brinde la misma información estaríamos enmarcando el testimonio de los encubiertos dentro de una "camisa de fuerza" que nos llevaría nuevamente al testimonio estereotipado que hemos rechazado en el pasado. Por otro lado, debemos estar conscientes de que habrá casos en que, por sus hechos particulares, el encubierto estará imposibilitado de brindar alguna de la información enumerada en la Ley Núm. 54 de 27 de mayo de 1980.

■ El propósito obvio del legislador al aprobar la referida Ley Núm. 54 —así como el que igualmente ha motivado nuestras innumerables decisiones al respecto— es el de lograr que los agentes encubiertos brinden la mayor información posible sobre los hechos y circunstancias que rodearon la transacción delictiva que ellos afirman se llevó a cabo.

A diferencia de la situación en que el agente encubierto meramente brinda los "particulares mínimos para establecer la infracción", la información adicional que se intenta que el agente ofrezca le permite a la defensa el poder cuestionar con mayor facilidad la credibilidad de éste y el poder demostrar, si es que así lo entiende procedente y necesario, mediante la presentación de prueba, que el agente miente. Ello, a su vez, sitúa al tribunal en una mejor posición para determinar sobre la inocencia o culpabilidad del acusado. (⁴)

■ Debemos tener presente, por último, que el principal objetivo que se persigue es que el testimonio del agente encubierto no sea —como lo calificamos en *Pueblo* v. *Ayala Ruiz*, ante, págs. 708–709— uno "flaco y descarnado" y que el mismo, por el contrario, sea uno completo, convincente y veraz. La responsabilidad de que ello así sea descansa principalmente en la propia Policía de Puerto Rico. A dicha institución le corresponde tomar los pasos necesarios para lograr dicho objetivo, como, por ejemplo, proveyendo un entrenamiento adecuado y eficaz a sus encubiertos y mediante la estrecha y estricta supervisión de la labor de los mismos. (⁵)

Los tribunales de justicia, por nuestra parte, continuaremos evaluando la labor que estos agentes prestan a la luz de

---

(⁴)La ausencia o no de la información enumerada en la Ley Núm. 54 será un elemento más a considerar por el tribunal en relación con la decisión que deberá hacer sobre si la declaración del agente encubierto en el caso ante su consideración le merece o no credibilidad.

(⁵)En *Pueblo* v. *Sanabria Pérez*, 113 D.P.R. 694 (1983), expresamos que la Policía de Puerto Rico debe, hasta donde las circunstancias lo permitan, hacer un esfuerzo por corroborar al máximo la labor del encubierto mediante la utilización efectiva del agente supervisor de éste.

los hechos específicos de cada caso, teniendo siempre por meta el hacer la mejor justicia de que nosotros los seres humanos somos capaces.

## IV

En el descargo de esa responsabilidad procedemos a examinar los hechos particulares del caso ante nuestra consideración. Se repite en el presente caso una situación que hemos rechazado expresamente en el pasado. En *Pueblo* v. *Falú Fuentes*, 102 D.P.R. 809 (1974), revocamos una convicción bajo la Ley de Sustancias Controladas al confrontarnos con que la descripción que del acusado había ofrecido el agente encubierto en el "informe confidencial" que le había rendido a sus supervisores no concordaba con éste. Expresamos, en síntesis, que aceptábamos que una persona pudiera equivocarse al calcular la edad, peso y estatura de otro, pero que los tribunales de justicia teníamos la obligación de ser bien exigentes en el caso de un agente encubierto por cuanto se suponía que éste había sido "entrenado especialmente para hacer esos cálculos y presentar informes exactos de lo que observara". Íd., págs. 812–813. A igual resultado llegamos, y en términos similares nos expresamos, en *Pueblo* v. *Sanabria Pérez*, ante.

■ La descripción física que del aquí apelante brindara el agente encubierto, en la declaración jurada que prestara en cumplimiento de la citada Ley Núm. 54, no se ajusta a la realidad. (⁶) Si a ello le añadimos el hecho de que el testimonio del agente encubierto —según surge de la exposición narrativa de la prueba certificada como correcta por el foro de ins-

---

(⁶) El encubierto describió al apelante, en lo pertinente, como una persona de cinco pies dos pulgadas de estatura y de ciento setenta libras de peso; en otras palabras, una persona *extremadamente obesa* para su baja estatura.

El apelante, aun cuando escasamente alcanza los cinco pies de estatura, pesa ciento veintinueve libras; o sea, una persona pequeña y delgada.

tancia— no es lo completo y convincente que exige nuestra jurisprudencia, *Pueblo* v. *Ayala Ruiz*, ante, *forzosa es la conclusión de que procede la revocación de la sentencia apelada.*

El Juez Presidente Interino Señor Irizarry Yunqué no intervino y el Juez Asociado Señor Negrón García disiente con opinión.

—O—

Opinión disidente del Juez Asociado Señor Negrón García.

Coincidimos con la conclusión del Tribunal en cuanto al alcance jurídico y admisibilidad de la declaración jurada prestada por el agente encubierto Gabriel A. Medina López. La misma cumple sustancialmente con la información requerida por la Asamblea Legislativa mediante la Ley Núm. 54 de 25 de mayo de 1980.

No obstante, disentimos en cuanto a que la evidencia desfilada —según aquilatada y dirimida por el tribunal sentenciador— no demostró más allá de duda razonable la culpabilidad del apelante Julio Álamo Álamo. La Exposición Narrativa de la Prueba revela que la incongruencia entre la apreciación del agente Medina López respecto al peso y estatura del apelante Álamo Álamo fue explicada satisfactoriamente. (E.N.P. págs. 7–8.) Una vez superada esta incongruencia, en los extremos esenciales de descripción, edad, presencia y demás detalles, la prueba fue suficiente.

Por su contacto directo con los protagonistas y testigos, como regla general, debemos respetar la función estimativa de las salas de instancia. En ello se afianza nuestro sistema de administrar justicia. Se entiende. Después de todo, la dinámica de la psicogénesis judicial es compleja. Recordemos que "[c]ada una de las operaciones intelectuales que sirve para formar el fallo desempeña un papel más o menos claro o importante, según la etapa del proceso. Para el planteamiento de la cuestión, es principalmente el análisis y la clasificación de

682

las ideas. Para la comprobación de los hechos, la observación, la intuición, el examen analítico y crítico. Para la aplicación del derecho, la interpretación, la deducción y la comparación. Para la decisión, la determinación, la apreciación, la síntesis y la voluntad". F. Gorphe, *Las Resoluciones Judiciales*, Buenos Aires, Eds. Jurídicas Europa-América, 1953, págs. 68–69.